**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PHILIP RYAN, JR. and DONALD FRIEDMAN, on behalf of themselves and all other similarly situated stockholders of MINDBODY, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>MINDBODY, INC., RICHARD L. STOLLMEYER, KATHERINE BLAIR CHRISTIE, COURT CUNNINGHAM, GAIL GOODMAN, CIPORA HERMAN, ERIC LIAW, ADAM MILLER, GRAHAM SMITH, VISTA EQUITY PARTNERS MANAGEMENT, LLC, TORREYS PARENT, LLC, TORREYS MERGER SUB, INC., and INSTITUTIONAL VENTURE PARTNERS XIII, L.P., MINDBODY, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2019-0061-KSJM |
| LUXOR CAPITAL PARTNERS, LP, LUXOR CAPITAL PARTNERS OFFSHORE MASTER FUND, LP, LUXOR WAVEFRONT, LP, and LUGARD ROAD CAPITAL MASTER FUND, LP, on behalf of themselves and all other similarly situated former stockholders of MINDBODY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD L. STOLLMEYER, BRETT WHITE, and ERIC LIAW,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 2019-0442-KSJM |

## ORDER CONSOLIDATING RELATED ACTIONS, SEVERING CLAIM, AND ESTABLISHING A LEADERSHIP STRUCTURE

1. Pending before this Court are three lawsuits challenging the acquisition of MINDBODY, Inc. by Vista Equity Partners Management, LLC ("Vista"): *Ryan v. Mindbody, Inc.*, C.A. No. 2019-0061-KSJM (the "*Ryan* Action"); *Luxor Capital Partners, LP v. Stollmeyer*, C.A. No. 2019-0442-KSJM (the "*Luxor* Action"); and *Luxor Capital Partners, LP v. Stollmeyer*, C.A. No. 2019-0293-KSJM (the "Appraisal Action"). These actions are related in that they arise from common questions of law and fact. This decision refers to them as the "Related Actions."

2. The Related Actions are consolidated for all purposes—except those identified in ¶ 4 below—and are referred to as the "Consolidated Action." Going forward, all papers in the Consolidated Action shall be filed in C.A. No. 2019-0442-KSJM. All papers and documents previously served and filed in any of the Related Actions are deemed a part of the record in the Consolidated Action. The Consolidated Action shall bear the caption below:

| | | |
|---|---|---|
| IN RE MINDBODY, INC., STOCKHOLDERS LITIGATION | ) ) | Consolidated C.A. No. 2019-0442-KSJM |

3. Two groups of stockholder plaintiffs and counsel seek to be appointed to leadership roles in the Consolidated Action.

a.    Plaintiff in the *Ryan* Action, Philip Ryan, Jr.,[1] proposes that his claims brought pursuant to 8 *Del C.* § 225 (the "Section 225 Claims"), as well as disclosure issues addressed in the trial briefs filed at C.A. No. 2019-0061-KSJM, Docket Nos. 79, 87, and 91 (the "*Ryan* Disclosure Issues"), be severed from the Consolidated Action and remain in the *Ryan* Action.  Ryan also seeks to be appointed lead plaintiff and to have his counsel, Prickett, Jones & Elliott, P.A. and Kessler Topaz Meltzer & Check, LLP, appointed as co-lead counsel in the Consolidated Action.  This Order refers to Ryan and his counsel as "Team Ryan."

b.    Plaintiffs in the *Luxor* Action, Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP, Luxor Wavefront, LP, and Lugard Road Capital Master Fund, LP (collectively, the "Luxor Plaintiffs"), do not oppose severing the Section 225 Claims from the Consolidated Action, but they argue that certain of the *Ryan* Disclosure Issues should be litigated as part of the Consolidated Action.  The Luxor Plaintiffs propose that they each be appointed as lead plaintiffs and have their counsel, Friedlander & Gorris, P.A., and Bernstein Litowitz Berger & Grossman LLP, appointed as co-lead

---

[1] Donald Friedman was an additional named plaintiff in the *Ryan* Action but has withdrawn as a plaintiff because his son, coincidentally, works for Luxor.

3

counsel in the Consolidated Action. This Order refers to the Luxor Plaintiffs and their counsel as "Team Luxor."

4. As a threshold matter, Team Ryan's request to sever the Section 225 Claims is granted and Team Ryan may continue to pursue those claims. The Section 225 Claims have been fully litigated and briefed, there is no reason to delay their resolution, and it would be inefficient to switch teams for the purpose of prosecuting those claims at this stage. The parties in the *Ryan* Action shall contact Chambers to reschedule oral argument on the Section 225 Claims. Following oral argument, the Court will determine whether the *Ryan* Disclosure Issues should be resolved as part of the Section 225 Claims or as part of the Consolidated Action. The record on the Section 225 Claims shall be considered part of the record in the Consolidated Action, such that the class may benefit from the record created on the Section 225 Claims to date.

5. Turning now to the leadership dispute, the Court applies the six "*Hirt* factors"[2] when designating a lead plaintiff and lead counsel in a representative action. The Court has organized those factors into three categories: (a) factors relating to the lead plaintiffs; (b) factors relating to counsel's performance in the

---

[2] *Hirt v. U.S. Timberlands Serv. Co.*, 2002 WL 1558342 (Del. Ch. July 3, 2002).

litigation to date; and (c) factors relating to counsel's track record and ability to litigate going forward.[3]

6.     The first category of *Hirt* factors relating to the lead plaintiffs considers the relative economic stakes of the competing litigants and the absence of any conflict between larger stockholders and smaller stockholders.[4] When evaluating this category of factors, relative ownership is "to be accorded great weight,"[5] as a relatively small ownership stake may reduce a stockholder's incentive to monitor counsel, leading to greater agency costs.[6] Contrawise, a "sufficient stake" can provide a plaintiff with an incentive "monitor counsel and play a meaningful role in conducting the case."[7]

a.     Prior to the challenged transaction, Ryan held only 202 shares of MINDBODY Class A common stock.

---

[3] *In re Del Monte Foods Co. S'holders Litig.*, 2010 WL 5550677, at *6–11 (Del. Ch. Dec. 31, 2010).

[4] *Hirt*, 2002 WL 1558342, at *2; *Del Monte Foods*, 2010 WL 5550677, at *6.

[5] *Hirt*, 2002 WL 1558342, at *2.

[6] *See Del Monte Foods*, 2010 WL 5550677, at *8 (noting one plaintiff "does not have a sufficiently large stake to provide an incentive to monitor counsel and reduce agency costs").

[7] *In re Revlon, Inc. S'holder Litig.*, 990 A.2d 940, 955 (Del. Ch. 2010) (stating that "the weight given to the size of a plaintiffs' holding is not used to generate a formalistic ranking, but rather comes into play when a plaintiff owns a sufficient stake to provide an economic incentive to monitor counsel and play a meaningful role in conducting the case").

5

b.    In contrast, the Luxor Plaintiffs held 9,074,929 shares of MINDBODY Class A common stock. The Luxor Plaintiffs demanded appraisal with respect to 3,738,935 of these shares, but they accepted the merger consideration for 5,335,994 of these shares to retain their standing to pursue any potential fiduciary claims. The Luxor Plaintiffs' interest qualifies as a "sufficient stake to provide an economic incentive to monitor counsel and play a meaningful role in conducting the case."[8]

c.    Ryan questions whether the Luxor Plaintiffs' simultaneous prosecution of the Appraisal Action might raise conflicts. Ryan argues that at the settlement phase, the Luxor Plaintiffs will be incentivized to divert as much as possible to the Appraisal Action without consideration for the fiduciary claims since "an appraisal proceeding benefits only those stockholders who perfect their appraisal rights, not the stockholders more broadly."[9]

d.    The common representation of class action plaintiffs and appraisal petitioners does not present an automatically disqualifying conflict.

---

[8] *Revlon*, 990 A.2d at 955.

[9] *In re Orchard Enters., Inc. S'holder Litig.*, 2014 WL 4181912, at *10 (Del. Ch. Aug. 22, 2014).

This Court has witnessed effective dual representation lead to financial and informational advantages for members of the class.[10]

     e.     In this case, the common pursuit of class claims and appraisal claims does not present a disqualifying conflict. The Luxor Plaintiffs' non-appraisal stake of over five million shares is by no means nominal. This potential upside for a hedge fund should more than adequately align its incentives with the rest of the class. Further, the conflicts surrounding settlement issues identified by Ryan are presently hypothetical only and can be managed by counsel, and monitored by this Court, if they arise.

7.     The second category of *Hirt* factors considers performance in the litigation to date, analyzing the efforts of counsel and the quality of the pleading that resulted from those efforts.[11]

     a.     Both teams have demonstrated enthusiasm and vigor in prosecuting their separate cases to date, although they have chosen separate and distinct litigation strategies for challenging the underlying transaction.

---

[10] *See, e.g., In re Emerging Commc'ns, Inc. S'holders Litig.*, 2004 WL 1305745, at *1 (Del. Ch. June 4, 2004) (finding that the fair value of stock was 271% greater than the deal price in case prosecuted by a plaintiff litigating as both class representative and appraisal petitioner); *see also In re Orchard Enters., Inc. S'holder Litig.*, 2014 WL 4181912, at *11 (Del. Ch. Aug. 22, 2014) (noting stockholders in a class action may benefit "from the appraisal claimant's investment in the proceeding and any resulting informational assets").

[11] *Hirt*, 2002 WL 1558342, at *2; *Del Monte Foods*, 2010 WL 5550677, at *6 (specifically describing "the quality of the pleading that appears best able to represent the interests of

7

b.     Team Ryan moved swiftly to pursue Ryan's claims, commencing this litigation on January 29, 2019. Ryan's original complaint asserted five causes of action: Count I asserts claims under 8 *Del C.* §§ 111, 225, and 227 challenging the validity of the stockholder vote that approved the transaction; Count II claims that the merger violated the equal treatment provision of the MINDBODY certificate of incorporation; Count III claims that MINDBODY's CEO breached his fiduciary duties; Count IV claims that the MINDBODY directors breached their fiduciary duties; and Count V claims that Vista aided and abetted the fiduciary breaches. Ryan amended his complaint on February 13, 2019 after MINDBODY issued corrective disclosures. The amended complaint asserts the same causes of action supplemented by additional factual allegations.

c.     Team Ryan moved to expedite a trial on Count I, which the parties and this Order refer to as the Section 225 Claims. The Section 225 Claims raise technical issues concerning the validity of the stockholder vote on the challenged transaction. On February 27, 2019, the Court ordered that a trial on the Section 225 Claims be scheduled for April 2019, and that expedited discovery be conducted in the interim. In expedited discovery,

the shareholder class and . . . the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit").

Team Ryan obtained 31,000 pages of documents and took six depositions. On April 23, 2019, the parties stipulated to present the case on a paper record. The parties completed trial briefing on June 13, 2019, and argument was set for July 23, 2019. At a hearing on July 16, 2019, the Court ordered submissions on the instant motions and postponed the July 23, 2019 argument.

d. Team Luxor took a different path. On January 18, 2019, the Luxor Plaintiffs demanded to inspect MINDBODY books and records pursuant to Section 220 of the Delaware General Corporation Law. The Luxor Plaintiffs then filed and settled its 220 action, obtaining key documents in the process. For a portion of its shares, the Luxor Plaintiffs demanded appraisal and commenced the Appraisal Action on April 17, 2019. Using discovery that it obtained in the Appraisal Action, documents from the 220 action, as well as documents made available from expedited discovery in the *Ryan* Action, the Luxor Plaintiffs commenced the *Luxor* Action on June 12, 2019.

e. Both teams have worked vigorously in pursuing their chosen strategies and are committed to continue their efforts going forward. At this stage, it would be imprudent for the Court to opine on the merits of either strategy, except to acknowledge that both are facially meritorious.

9

8.     The third category of *Hirt* factors considers counsel's track record and the contestants' willingness and ability to litigate going forward.[12] All counsel vying for leadership have a demonstrated history of success in this Court. There is no doubt that each also has the resources to devote to prosecuting this case and is motivated to do so.

9.     Considering all of the *Hirt* factors, the Luxor Plaintiffs' significant relative ownership stake tips the balance in their favor. Recognizing this, and in light of their efforts in the *Ryan* Action to date, Team Ryan argues in the alternative that the Court should force the competing factions to work together as a combined team. On this point, the Court is reminded of the words of the great Knute Rockne. To paraphrase: you play not your best eleven, but your eleven best. Coach Rockne meant to emphasize the importance of team dynamics to a team's success, which this Court has similarly recognized in the context of class leadership disputes. Cognizant that forcing cooperation risks impairing team dynamics, this Court has repeatedly declined to craft its own leadership structure in lieu of selecting a team that the parties have formed themselves.[13] I see no need to risk potential dysfunction

---

[12] *Hirt*, 2002 WL 1558342, at *2; *Del Monte Foods*, 2010 WL 5550677, at *6 (specifically describing "the willingness and ability of all the contests to litigate vigorously on behalf of an entire class of shareholders . . . [and] the competence of counsel and their access to the resources necessary to prosecute the claims at issue").

[13] *See, e.g., In re Expedia Gp., Inc. S'holders Litig.*, C.A. 2019-0494-JTL (Del. Ch. Sept. 20, 2019) (ORDER) (Laster, V.C.) (observing that "[a] successful team depends on a variety of factors, including group dynamics" and that "[i]t would be dangerous and

10

resulting from a forced leadership structure in this case and thus reject Team Ryan's alternative argument

10. The Luxor Plaintiffs are hereby appointed as Lead Plaintiffs of the Consolidated Action. The law firms of Friedlander & Gorris, P.A. and Bernstein

---

potentially counterproductive for the court to disregard the teams that counsel have formed and impose its own"); *In re Inv'rs Bancorp, Inc. S'holder Litig.*, 2016 WL 4257503, at *1 (Del. Ch. Aug. 12, 2016) (Slights, V.C.) (declining to force competing factions to work together because "it is not in the best interests of the Company or its stockholders to appoint all of the law firms competing for leadership as co-lead counsel"); *Raul v. Office Depot, Inc.*, C.A. No. 10628-CB at 69:5–12 (Del. Ch. Mar. 31, 2015) (TRANSCRIPT) (Bouchard, C.) (commenting that "[c]ompromising by including everyone in the leadership structure just leads to bad leadership and bad compromises. Now, this may be a catch-22 . . . but it's not a catch-22 I'm willing to endorse with inefficient leadership structures. At some point certain firms just need to be left out or step aside and focus their resources on a different case"); *Mesirov v. Pepco Hldgs., Inc.*, C.A. No. 9600–VCG at 22:5–16 (Del. Ch. June 11, 2014) (TRANSCRIPT) (Glasscock, V.C.) (expressing regret that the plaintiffs could not resolve their own disputed leadership but recognizing "it is important that [the Court] . . . not try to impose some other structure other than those two groups have decided for themselves"); *In re LSI Corp. S'holders Litig.*, C.A. No. 9175–VCN at 34:7–35:1 (Del. Ch. Jan. 23, 2014) (TRANSCRIPT) (Noble, V.C.) (declining to require cooperation between two lead plaintiffs and their counsel while noting that "the more members on a committee, the more awkward, at best, and the more dysfunctional, at worst, it may become"); *Weinstein v. Illumina, Inc.*, C.A. No. 7242-VCP at 55:5–56:8 (Del. Ch. Apr. 16, 2012) (TRANSCRIPT) (Parsons, V.C.) (declining to require a majority faction of plaintiffs to include and cooperate with dissenting plaintiff faction); *Se. Pa. Transp. Auth. v. Rubin*, 2011 WL 1709105, at *2 (Del. Ch. Apr. 29, 2011) (Noble, V.C.) ("[F]or the Court to appoint everyone (or most everyone) to a lead role would run the risk of imposing the inefficiencies and lack of focus that frequently plague committees. Ultimately, the objective must be to find the case management structure that optimizes the interest and potential of the shareholder class."). *But see Jacksonville Police and Fire Pension Fund v. Moffett*, 2013 WL 297958, at *4 (Del. Ch. Jan. 25, 2013) (Noble, V.C.) (appointing three firms as co-lead counsel despite questioning internal politics and negotiations that preceded apparent compromise); *In re Delphi Fin. Gp. S'holder Litig.*, 2012 WL 424886, at *3 (Del. Ch. Feb. 7, 2012) (Glasscock, V.C.) (appointing co-lead counsel after contenders had reached a compromise and submitted that "the remaining differences were minor and could be worked out among counsel going forward").

Litowitz Berger & Grossmann LLP are appointed as Co-Lead Counsel. The following law firms are designated as additional counsel: Prickett, Jones & Elliott, P.A.; Kessler Topaz Meltzer & Check, LLP; and Schall Law Firm.

11. Co-Lead Counsel shall set policy for the prosecution of this litigation, delegate and monitor the work performed to ensure that there is no duplication of effort or unnecessary expense, and initiate and coordinate the activities of counsel.

12. Co-Lead Counsel shall have the power and responsibility to:

   a. Coordinate and direct the preparation of pleadings;

   b. Coordinate and direct the briefing and argument of motions;

   c. Coordinate and direct the conduct of discovery and other pretrial proceedings;

   d. Coordinate and direct class certification proceedings;

   e. Conduct any and all settlement negotiations with counsel for the Defendants;

   f. Coordinate and direct the preparation for trial and trial of this matter, and delegate work responsibilities to selected counsel as may be required; and

   g. Coordinate and direct any other matters concerning the prosecution or resolution of the consolidated action.

13. The Verified Complaint in the *Luxor* Action is deemed operative for the Consolidated Action. The parties shall confer on an appropriate schedule moving forward regarding the Consolidated Action, including a deadline for Lead Plaintiffs to file an amended Consolidated Complaint.

Vice Chancellor Kathaleen St. J. McCormick
Dated: October 1, 2019